IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **AARON DOYLE PINKSTON-EL,** | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
|   v. | ) |
| | )   Case No.  02-1031-JPG |
| **DONALD SNYDER,** | ) |
| **JONATHON WALLS,** | ) |
| **B. SPILLER, and** | ) |
| **LIEUTENANT WILSON,** | ) |
| | ) |
|       **Defendants.** | ) |

**REPORT and RECOMMENDATION**

**PROUD, Magistrate Judge:**

This Report and Recommendation is respectfully submitted to Judge J. Phil Gilbert pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

Before the Court is Defendants' Motion for Summary Judgment. **(Doc. 38)**. Defendants filed a Memorandum in Support. **(Doc. 39)**. Plaintiff filed a response **(Doc. 42)** and defendants filed a reply **(Doc. 43)**.

Plaintiff is an inmate in the custody of the IDOC. He brings suit pursuant to 42 U.S.C. §1983. As construed by the Court on preliminary review, the amended complaint alleges that plaintiff is a member of the Moorish Science Temple and that he wears his hair in dreadlocks in observance of his religious faith. The IDOC has implemented a grooming policy with respect to hairstyles. He has refused to cut his dreadlocks, and, pursuant to the grooming policy, he has received numerous disciplinary tickets, and his dreadlocks have been forcibly cut. The Court construed the amended complaint **(Doc. 9)** as raising claims under the First Amendment and

1

under state law.  The state laws invoked by plaintiff are Article 1, section 2 of the Illinois Constitution, the "rights, privileges, and immunities " of Illinois law, and liberty and property "entitlements" created by IDOC rules and regulations.   **Doc. 9, pp. 6-7.**

In his response to the motion for summary judgment, plaintiff attempts to state claims for violation of his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and the Religious Freedom Restoration Act.  (The Court notes that the latter Act was declared unconstitutional in *City of Boerne v. Flores*, **521 U.S. 507, 117 S.Ct. 2157 (1997)**.)   He also attempts to raise due process claims with respect to the disciplinary tickets he received.  Because those claims were raised for the first time in plaintiff's response, they are not properly before the Court and will not be considered.  "[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Grayson v. O'Neill*, **308 F.3d 808, 817 (7th Cir. 2002), citing** *Shanahan v. City of Chicago*, **82 F.3d 776, 781 (7th Cir. 1996).**

The Court notes that plaintiff made allegations of a class action in his amended complaint.  Plaintiff has never taken any action to have this case certified as a class action, plaintiff's individual claims are the only claims before the Court.

## Standard for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c);** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).**  The Court must construe the evidence in the light most favorable to the nonmoving

party and draw all justifiable inferences in favor of that party.  **See,** ***Anderson v. Liberty Lobby Inc.*****, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14 (1986)**.

Once the moving party has produced evidence to show that it is entitled to summary judgment, the nonmoving party must affirmatively demonstrate that a genuine issue of material fact remains for trial.  ***Johnson v. City of Fort Wayne*****, 91 F.3d 922, 931 (7th Cir.1996).**  In responding to a summary judgment motion, the nonmoving party may not simply reiterate the allegations contained in the pleadings.  "The object of [Rule 56(e) ] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." ***Lujan v. National Wildlife Federation*****, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990).**

A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," ***Anderson*****, 477 U.S. at 247, 106 S.Ct. at 2510**, or by "some metaphysical doubt as to the material facts," ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*****, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).**  Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence Summary judgment is not barred by the mere existence of some factual dispute.  ***Anderson*****, 477 U.S. at 248; see also,** ***JPM Inc. v. John Deere Industrial Equipment Company*****, 94 F.3d 270, 273 (7th Cir. 1996).**  Only disputes as to facts that might affect the outcome of the suit in light of the substantive law are sufficient to defeat summary judgment.  Disputes as to irrelevant or unnecessary facts do not preclude summary judgment.  ***Clifton v. Schafer*****, 969 F. 278, 281 (7th Cir. 1992).**

## Analysis

Although prisoners retain their First Amendment right to the free exercise of religion,

prison officials may enforce policies and regulations which limit the exercise of religious practices.  "To ensure that courts afford appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights."  ***O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404 (1987)**.  Prison regulations or policies that impinge on an inmate's First Amendment rights are valid if they are reasonably related to a legitimate penological interest.  ***Shaw v. Murphy*, 532 U.S. 223, 223, 121 S. Ct. 1475, 1476  (2001)**; ***Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261 (1987).**

"[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others to merit First Amendment protection."  ***Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 714, 101 S.Ct. 1425, 1429 (1981).**  At the same time, prisoners' constitutional rights may be restricted by the fact of confinement and the needs of the penal institution.  ***See Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125, 97 S. Ct. 2532, 2537-2538  (1977).**  "A prisoner's right to freely exercise his religious beliefs does not depend upon his ability to pursue each and every aspect of the practice of his religion."  ***Canedy v. Boardman*, 91 F.3d 30, 33 (7th Cir. 1996).**  "[A]n inmate is not entitled to follow every aspect of his religion; the prison may restrict the inmate's practices if its legitimate penological interests outweigh the prisoner's religious interests.  ***Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005)**.  Whether other avenues remain available for the exercise of the asserted right is one of the key tests of "reasonableness."  ***Turner*, 482 U.S. at 90.**

20 Ill.Administrative Code 502.110(a) states that "Committed persons may have any

4

length of hair, sideburns, mustaches, or beards so long as they are kept neat and clean *and do not create a security risk.*" (Emphasis added.)  On February 1, 2002, Warden Walls authorized a Procedural Bulletin which stated that an "individual grooming requirement" may be imposed on inmates who wear hairstyles which "create a risk that contraband hidden in the hair cannot be detected or that impede searches for contraband or that pose a risk that contraband hidden in the hair may injure the employee(s) charged with searching the offender."  **See, Walls affidavit, Doc. 39**, **Exhibit B**.  The bulletin goes on to state that inmates who refuse to comply with an order to undo the hairstyle or to submit to a haircut may be disciplined, and the hairstyle may be forcibly changed.  A copy of the bulletin is attached hereto.

According to Walls' affidavit, on May 1, 2002, he authorized Institutional Directive 05.13.160.  This ID sets forth the procedure for enforcement of an individual grooming requirement for an inmate whose hairstyle had been determined to be a health, sanitation or security risk.  A copy of the ID is attached to Walls' affidavit.  The ID was promulgated pursuant to an Administrative Directive on the same subject, issued by the Director of the IDOC, on April 1, 2002.  A copy of the AD is also attached to Walls' affidavit.  Thus, although plaintiff's amended complaint refers to an unwritten policy on personal grooming, it is obvious that the policy was, in fact, written.

Portions of plaintiff's deposition are attached to **Doc. 39 as Exhibit A**.  Plaintiff testified that his religion is Moorish Science Temple.  **Exhibit A, pp. 11-12.**  He has taken the Nazarite vow, which requires him to refrain from cutting his hair.  **Exhibit A, pp. 27-29.**  Plaintiff wore his hair in dreadlocks.  He had about 99 locks, some of which were as thick as a pencil.  The locks hung down his back.  **Exhibit A, pp. 38, 59.**  The hair was locked together and could not

5

be taken loose. **Exhibit A, pp. 59, 61**. Plaintiff acknowledged that some inmates hide contraband in their hair, such as "a joint or two" or "some money." **Exhibit A, p. 103.**

Walls' affidavit states that inmates can hide contraband in hair, and that it is necessary for staff to be able to search inmates' hair. In order to conduct a search, staff must run fingers through the hair. It is more difficult to search dreadlocked hair because the hair is "usually quite thick and matted together." **Doc. 39, Exhibit B, ¶¶9-17.** His affidavit also states that staff members who must manually search dreadlocked hair are exposed to being cut by material hidden in the hair, such as needles, razor blades, or shards of glass. If cut by such materials, the staff member is then faced with the possibility of exposure to diseases such as HIV, Hepatitis, or Tuberculosis. **Doc. 39, Exhibit B, ¶ 21.**

The affidavits of Warden Walls, Lieutenant Wilson, and Unit Superintendent Spiller all state that searching an inmate's hair is "vital in the detection of contraband." They also state that the grooming policy was applied to all inmates regardless of race, religion, or culture**. See, Doc. 39, Exhibits B, C, and D.**

The grooming policy does not violate plaintiff's First Amendment right to practice his religion if is "reasonably related to legitimate penological interests." ***Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987)**. In ***Reed v. Faulkner*, 842 F.2d 960 (7th Cir. 1988),** the Seventh Circuit noted that this is "not a demanding standard." ***Reed*, 842 F.2d at 962.** If the regulation "strikes a reasonable balance between the interest in religious liberty and the needs of prison safety and security, he must lose on his free exercise claim." ***Id*. at 962.**

The Court considers the following four factors in balancing plaintiff's interest in religious liberty and the needs of prison safety and security: (1) whether there is a valid, rational

connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether alternative means of exercising the constitutional right remain open to the inmate; (3) the impact accommodation of the constitutional right will have on guards and other inmates, as well as on prison resources generally; and (4) whether an alternative exists that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests. ***Turner v. Safley*, 482 U.S. at 89-92, 107 S.Ct. at 2262.**

The record establishes that the grooming policy is reasonably related to a legitimate penological interest. Defendants' affidavits describe in detail the safety and security risks posed by some inmate hairstyles, including dreadlocks. Plaintiff himself admitted in his deposition that some inmates hide contraband in their hair.

It is evident that plaintiff can still practice the Moorish Science Temple religion even with his hair cut. He was not required to take the Nazarite vow in order to be a member of the Moorish Science Temple religion. **Doc. 39, Exhibit A, p. 30.** As he described the vow, it was a promise not to cut his hair or beard. He did not testify that the vow required that his hair be worn in dreadlocks. **Exhibit A, pp. 26, 28-29.** The vow is renewed on a yearly basis. **Exhibit A, p. 29.** The religion does not require any particular hair length, and he remained a member of the religion after his hair was cut. **Exhibit A, p. 38**. Plaintiff testified that it is "an individual choice," the majority of Muslims, and the "majority of the guys in Moorish Science don't have dreadlocks." **Exhibit A, p 62.** Plaintiff practices his faith by fasting, observing Ramadan, attending services on Fridays, and reading the Koran. **Exhibit A, pp. 14, 111-112.** He possesses a copy of the Koran, and has had his Koran at all times except when he was put in a stripped cell. ***Id.*** Thus, it appears that plaintiff has ample means of practicing his religion even without wearing dreadlocks.

In view of the difficulty of searching dreadlocked hair, and the possibility that staff may be cut or otherwise injured as described in defendants' affidavits, accommodating plaintiff's desire to wear dreadlocks would have a substantial impact on the prison. No ready alternative has been suggested that would fully accommodate plaintiffs rights at *de minimis* cost to valid penological interests.

This Court concludes that the grooming policy does not violate plaintiff's First Amendment rights.

Plaintiff also testified that he wore his hair in dreadlocks, in part, for "cultural" reasons associated with his heritage as a member of the Washitaw Nation of Moors. **Exhibit A, pp. 62-63.** Such a cultural expression is not protected by the First Amendment. "Only beliefs rooted in religion are protected by the Free Exercise Clause, which, by its terms, gives special protection to the exercise of religion." ***Thomas v. Review Board of Indiana Employment Security Division*, 450 U.S. 707, 714, 101 S.Ct. 1425, 1430 (1981).**

Plaintiff also suggested in his Amended Complaint that the application of the grooming policy to him violated his equal protection rights because it was applied only to Muslims, and the purpose was to retaliate against Islamic inmates for the terrorist attacks of September 11, 2001. As was noted above, defendants' affidavits state that the policy was applied to all inmates regardless of race, religion, or culture. **See, Doc. 39, Exhibits B, C, and D**. Plaintiff has not presented any evidence to counter that statement. He says that the fact that an inmate named Reed had his hair cut, and that some correctional officers wear dreadlocks, proves that the policy violates his equal protection rights. **See, Doc., 42, p. 13.** Obviously, the prison is not constitutionally required to apply the same grooming policy to officers and inmates.

This Court finds that defendants are entitled to summary judgment on plaintiff's First Amendment and equal protection claims.  That leaves only his state law claims for consideration.

This Court has supplemental jurisdiction over plaintiff's state law claims pursuant to **28 U.S.C. §1367.**  Whether to retain pendent, or supplemental, jurisdiction is a matter within the discretion of the District Court.  ***United Mine Workers of America v. Gibbs***, **383 U.S. 715, 726, 86 S.Ct. 1130, 1139 (1966)**.  Factors to be considered in deciding whether to exercise jurisdiction over pendent state-law claims are  judicial economy, convenience, fairness and comity. ***Carnegie-Mellon Univ. v. Cohill***, **484 U.S. 343, 350, 108 S.Ct. 614, 619 (1988).**  Where all federal claims are dismissed before trial, consideration of these factors will generally  lead to a decision declining to exercise jurisdiction over remaining state law claims.  ***Gibbs***, **383 U.S. at 726, 86 S.Ct. at 1139.**

This is not one of the "unusual cases" in which consideration of the ***Gibbs*** factors favors retention of the state law claims.  ***Wright v. Associated Ins. Companies Inc.***, **29 F.3d 1244, 1251 (7th Cir. 1994).**

The Court notes that **28 U.S.C. §1367(d**) "The period of limitations for any claim asserted under subsection (a) [i.e., related state law claims] ... shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

### Recommendation

For the foregoing reasons, this Court recommends that Defendants' Motion for Summary Judgment **(Doc. 38)** be **GRANTED**.  Summary judgment should be granted in favor of Defendants DONALD SNYDER, JONATHAN WALLS, MARTIN B. SPILLER and ANDREW

WILSON on plaintiff's First Amendment and equal protection claims.  In addition, his state law claims should be dismissed for lack of jurisdiction.

If this report and recommendation is adopted in its entirety, no claims will remain pending.

Objections to this Report and Recommendation must be filed on or before **April 12, 2006.**

Submitted:  March 24, 2006.

s/ Clifford J. Proud
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**