IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AARON DOYLE PINKSTON-EL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 02-CV-1031-JPG |
| | ) |
| DONALD SNYDER, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter is before the Court on Magistrate Judge Clifford Proud's Report and Recommendation (R&R) (Doc. 45). In his R&R, Judge Proud recommends that the Court grant defendants' motion for summary judgment (Doc. 45). Pinkston-El did not object to the R&R and the Court initially adopted it in its entirety. (Doc. 46). It vacated its order on June 5, 2006 after Pinkston-El informed the Court that he did not object to the R&R because he never received a copy of it. (Doc. 49). Two days later, the Court received Pinkston-El's notice of appeal regarding the Court's order adopting the R&R, accompanied by Pinkston-El's motion for leave to appeal *in forma pauperis* (Docs. 50, 51). Though the Court received his notice of appeal after it vacated its order adopting the R&R, Pinkston-El actually signed the notice on June 2, 2006, three days before the vacatur. Pinkston-El timely filed his objections to the R&R (Doc. 56), and defendants have responded (Doc. 57). Pinkston-El has also filed a motion to appoint counsel (Doc. 55).

## BACKGROUND

**I.   Jurisdiction**

Before addressing the merits of Pinkston-El's objections and his motion to appoint counsel,

the Court must address the jurisdictional effect of his notice of appeal. As the filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal[,]" *Wisc. Mut. Ins. Co. v. United States*, 441 F.3d 502, 504 (7th Cir. 2006) (internal quotation marks and citation omitted), the question is, of course, whether the Court had jurisdiction to vacate its order. At first blush, the obvious answer seems to be yes. The Court vacated the order *before* it received Pinkston-El's notice of appeal. Nevertheless, because Pinkston-El mailed his notice of appeal before the Court vacated its order, if the mailbox rule applies to this filing, the Court was without jurisdiction to vacate its order. Under Federal Rule of Appellate Procedure 4(c)(1), a notice of appeal is considered filed the day the prisoner deposits it in the mail if he makes a declaration in accordance with 28 U.S.C. § 1746 or by a notarized statement. To benefit from the rule, the declaration or statement must "set forth the date of deposit and state that first-class postage has been prepaid." Fed.R.App.P. 4(c)(1). Pinkston-El's notice of appeal does not comply with this provision because he failed to state that first-class postage had been prepaid. Thus, the Court will consider it filed the day the Clerk's Office received it, which makes it a nullity. This works no hardship on Pinkston-El, and in any event, he tacitly admitted that his notice was null when he filed his timely objections. Accordingly, the Court has jurisdiction in this matte and **DENIES** his motion for leave to appeal *in forma pauperis* as **MOOT**.

## II.    Motion to Appoint Counsel

Pinkston-El also asks the Court to appoint him counsel in this matter. He has attached a letter from one law firm declining to represent him in this matter and several letters from various legal aid groups, though the letters are not clear, the Court can only assume that these organizations declined to represent him as well. Pinkston-El claims that he cannot understand all of Judge Proud's order and that he, at the time he filed the motion, did not have sufficient access to the prison's library (due to a

2

lock down and the presence of only two law clerks for 2000 inmates) to file his objections within the 10 days given him by the Court. Despite these facts, Pinkston-El was able to file five single-spaced pages of objections within the period given him by the Court.

Judge Proud denied Pinkston-El's first motion for appointment of counsel on March 9, 2005 (Doc. 14). In this order, Judge Proud noted that Pinkston-El had not included any information regarding his attempts to secure private counsel to represent him. This was not the deciding factor in Judge Proud's decision, however, as he went on to find that Pinkston-El was capable of proceeding without counsel, given the issues presented. Judge Proud found that Pinkston-El's filings with the court demonstrated his ability adequately to communicate his positions. The Court sees no reason to disagree with Judge Proud on this score. The only new argument presented in his second motion is that he did not have sufficient time or access to the prison library to object to the R&R in a timely manner. The passage of time has shown that he was indeed able to lodge his objections within the time prescribed by the Court. For these reasons, Pinkston-El's motion for appointment of counsel is **DENIED**.

**III.    Judge Proud's R&R**

Pinkston-El had four claims that passed this Court's initial screening: a First Amendment claim and three related state claims. (Doc. 11). He based all his claims on an Illinois Department of Corrections (IDOC) policy which forbids "[h]airstyles that create a risk that contraband hidden in the hair cannot be detected or that impede searches for contraband or that pose a risk that contraband hidden in the hair may injure the employee(s) charged with searching the offender." I.D.O.C. Policy Number FY02-IN-#30. Pinkston-El, as a member of the Moorish Science Temple, takes the Nazarite vow, which forbids him from cutting his hair. Because of his *choice* of hairstyle, IDOC officials have issued him disciplinary tickets for refusing to cut his dreadlocks, and have forcibly cut his hair.

Pinkston-El claims this policy violates his First Amendment rights to the free exercise of his religion.

Judge Proud recommended that the Court grant defendants' motion for summary judgment on Pinkston-El's First Amendment claim and decline to exercise supplemental jurisdiction over his remaining state law claims. (Doc. 45 at 8-9). Essentially, he found that the IDOC policy does not violate the First Amendment because it is reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78 (1987); *Reed v. Faulkner*, 842 F.2d 960 (7th Cir. 1988). Judge Proud came to this determination after reviewing a number of affidavits from prison officials and staff. Proud also found that Pinkston-El impermissibly attempted to amend his complaint when he raised claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and the Illinois Religious Freedom Restoration Act for the first time in response to defendants' motion for summary judgment. (Doc. 45 at 2). He also found that though Pinkston-El made allegations of a class action in his amended complaint, his failure to take any action to have this case certified as a class action essentially waived them. (*Id*.).

## IV.   Pinkston-El's Objections

Pinkston-El claims that there are numerous genuine disputes of material fact, yet he fails to identify them. He claims that defendants' failures to provide documents he requested make summary judgment inappropriate, yet he fails to identify the requests they did not comply with or why he did not raise this argument before Judge Proud issued his R&R. He also claims he raised his Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 *et seq.*, claim in his initial complaint, though he admits he did not raise it in his amended complaint. Finally, he also claims the "reasonableness test" applied to prison regulations alleged to violate the First Amendment is inconsistent with RLUIPA. *See Shaw v. Murphy*, 532 U.S.223 (2001); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). He believes the disparate treatment received by one of his fellow inmates shows that the policy, or at least

4

its application to him, is unreasonable. The rest of Pinkston-El's objections are conclusory or irrelevant and merit no comment.

## ANALYSIS

After reviewing the R&R, the Court may accept, reject or modify, in whole or in part, the findings made therein. Fed. R. Civ. P. 72(b). As Pinkston-El has objected to the R&R in its entirety, the Court's review is de novo. *Id*.

The Court begins with the proposition that "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." *Murphy*, 532 U.S. at 229. Courts are ill equipped to deal with many of the problems in the prison system, and for that reason, they defer to the judgments made by prison officials when prison policies are subjected to constitutional attack. *Id*.

This is true in the First Amendment context, as the rights thereunder are often inconsistent with the "legitimate penological objectives of the corrections system." *Id*. (internal quotations and citation omitted). As stated in *Turner v. Safley*, 482 U.S. 78, 89 (1987), "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." In determining the reasonableness of these regulations, a court should analyze four factors. First, and most important, whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." *Id*. at 89-90 (internal quotations and citations omitted) ("Thus, a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational."). Second, a court should inquire "whether there are alternative means of exercising the right that remain open to prison inmates." *Id*. at 90. Third, the court must consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the

allocation of prison resources generally." *Id*. Fourth, the court should consider whether ready alternatives available to achieve the same ends exist. *Id*. ("[T]he absence of ready alternatives is evidence of the reasonableness of a prison regulation.").

Judge Proud applied this standard faithfully. First, he considered an affidavit from defendant Jonathon Walls, the Warden of the Menard Correctional Center when Pinkston-El was incarcerated there. According to his affidavit, inmates often hide contraband in their hair – including razor blades, glass, needles etc. – and as such, thorough searches of their hair is required. (Doc. 39, ex. B ¶¶ 9-17). Because dreadlocks are "quite thick and matted together . . . an adequate visual and tactile search cannot be performed." (*Id*. ¶17). When prison officials attempt to search dreadlocks, objects hidden in the hair may cut them, exposing them to HIV, TB and other communicable diseases that are prevalent among poisoners. (*Id*. ¶21). When an inmate wears his hair short, loose or straight, it is easier for officials to perform visual and tactile searches. (*Id*. ¶16). Defendants Wilson and Spiller similarly testified that searching an inmate's hair is extremely important in the detection of contraband. (*See, e.g.,* Doc. 39, ex. C ¶24). Walls, Wilson and Spiller also state that the prison's policy regarding searches of hair applies equally to all inmates, regardless of race, religion, hair length or hairstyle.

After considering the evidence in light of the factors in *Turner*, Judge Proud concluded that the grooming policy was reasonably related to a legitimate penological interest. The Court has carefully reviewed the parties' briefs and the evidence offered in support of them, the R&R, Pinkston-El's objections, and defendants' responses. After this review, the Court finds that Judge Proud's determination on Pinkston-El's First Amendment claim was correct. Pinkston-El simply failed to overcome the presumption that the prison officials acted within their "broad discretion." *See Murphy*, 532 U.S. at 232.

Similarly, the Court agrees with Proud's conclusion that Pinkston-El impermissibly attempted

to amend his complaint when responding to defendants' summary judgment motion. *See Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002). Pinkston-El was most vehement about Proud's ruling regarding his Illinois Religious Freedom Restoration Act claims. Even if this finding were incorrect, it is irrelevant so long as the Court adopts the R&R and refrains from exercising supplemental jurisdiction over Pinkston-El's state law claims. The Court also agrees that Pinkston-El's failure to address his class allegations in any way beyond his pleadings removed those claims from the Court's consideration. Finally, his claims regarding RLUIPA's effect on the reasonableness test here are irrelevant considering he has made no claim under that statute.

## CONCLUSION

The Court **DENIES** Pinkston-El's motion for leave to appeal *in forma pauperis* (Doc. 51) and motion to appoint counsel (Doc. 55). The Court **ADOPTS, in its entirety**, Judge Proud's R&R (Doc. 45). Therefore, the Court **GRANTS** defendants' motion for summary judgment and dismisses Pinkston-El's remaining state law claims. The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: August 17, 2006.**

  s/ J. Phil Gilbert
J. PHIL GILBERT
U.S. District Judge